UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61118-CIV-COHN/SELTZER

GISELE BENEDICT,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

I.    INTRODUCTION

THIS CAUSE is before the Court on the cross-motions for summary judgment[1] filed,

respectively, by Plaintiff Gisele Benedict ("Claimant") and by Defendant Michael J. Astrue,

Commissioner of Social Security ("Commissioner"). The motions were referred to the

undersigned pursuant to 28 U.S.C. § 636 and Magistrate Rule 1(c) and (d), Local Rules

of the United States District Court for the Southern District of Florida.

The cross-motions present the following issue: whether substantial evidence exists

to support the determination by the Administrative Law Judge ("ALJ") that Claimant retains

the capacity to return to her past relevant work and, therefore, that she is "not disabled"

within the meaning of the Social Security Act. The undersigned concludes that substantial

---

[1] Although other circuits have found the summary judgment device inappropriate
for deciding cases under the Social Security Act, see, e.g., Igonia v. Califano, 568 F.2d
1383 (D.C. Cir. 1977), this Circuit has deemed it appropriate where the district court has
reviewed the record and based its judgment on a finding of substantial evidence in the
administrative record. See Lovett v. Schweiker, 667 F.2d 1 (5th Cir. 1981).

evidence does support the ALJ's determination. Accordingly, the undersigned RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 14) be DENIED, that Defendant's Motion for Summary Judgment (DE 21) be GRANTED, and that the Commissioner's decision be AFFIRMED.

## II. PROCEDURAL HISTORY

On May 11, 2004, Claimant filed applications for a period of Disability, for Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI"). Tr. 55-57, 266-67. Claimant initially alleged a disability onset date of January 1, 2000, and alleged that she suffered from bilateral osteoarthritis in her knees and anxiety disorder. Tr. 29, 33, 268. Claimant later amended her alleged disability onset date to January 1, 2003. Tr. 301. The Social Security Administration denied Claimant's applications initially and upon reconsideration. Tr. 29-30, 34-35, 39-40, 43-44.

Claimant filed a timely request for hearing, which was held before an ALJ on July 25, 2005. Tr. 278. The ALJ issued his decision on September 16, 2005, finding that Claimant is "not disabled" because she retains the residual functional capacity to return to her past relevant work, as she had described it. Tr. 13-18. On July 6, 2007, the Appeals Council denied Claimant's request for review, leaving the ALJ's decision standing as the final decision of the Commissioner. Tr. 4.

On August 9, 2007, Claimant filed a Complaint in this Court seeking judicial review of the Commissioner's decision (DE 1). On October 29, 2007, the Commissioner filed an Answer, together with the administrative record (DE 11-12). On December 24, 2007, Claimant filed her Motion for Summary Judgment (DE 14), and on February 13, 2008, the

2

Commissioner filed Defendant's Motion for Summary Judgment with Supporting
Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE 21).
Claimant responded thereto on February 15, 2008 (DE 23).

This matter is now ripe for decision.

III.   FACTS

The undersigned has reviewed the Statement of Facts contained within Defendant's

Motion for Summary Judgment and finds that it fairly and accurately summarizes the

relevant portions of the administrative record.[2]

> Plaintiff filed her applications for disability insurance benefits
> and SSI benefits on May 11, 2004 (Tr. 55-57, 266-67). She
> was born in 1958, and alleged that [s]he became disabled
> beginning January 1, 2000, due to osteoarthritis of both knees
> (Tr. 55, 60-61). She had past relevant work as a service
> coordinator and companion (Tr. 61-62, 72-74).

> Plaintiff was injured in an automobile accident in 1990 and
> suffered a femoral shaft fracture and a left patella fracture (Tr.
> 92-99, 199). She had patellectomy on the left [knee] and a
> femoral rodding and fixation (Tr. 199). Subsequently, she
> underwent arthroscopy of the right knee, removal of the screws
> from left knee, and removal of the bicondylar tibial plates on
> the right (Tr. 199). She returned to work following the accident
> (Tr. 281).

> Plaintiff complained of bilateral knee pain on September 14,
> 2000 (Tr. 119). She was given a referral to an orthopedist (Tr.
> 119-20). By October 12, 2000, Plaintiff told Gerard Sterling,
> M.D., her knees were doing "great" with medication (Tr. 117).
> She was able to cross her legs without difficulty (Tr. 117).
> Osteoarthritis of both knees was assessed on January 25,
> 2001 (Tr. 112). In May 2001, Plaintiff told her physician that
> her medications were "working well" (Tr. 111). She also
> reported that Celebrex worked "great" on July 16, 2001 (Tr.

---

[2] The undersigned has bracketed minor corrections to the Statement of Facts.

110).

Glenn Sharfin, M.D., saw Plaintiff for an initial evaluation of right knee pain on November [19], 2001 (Tr. 199-200). An examination of the right knee showed moderate swelling and mild varus deformity of the knee (Tr. 199). Right knee x-rays showed substantial arthritis of the knee medially with partial loss of joint space and spurring on the tibia (Tr. 199). Dr. Sharfin assessed status post multiple fractures and surgeries of the right knee, with traumatic arthritis of the knee and symptomatic lateral condylar plate (Tr. 200). Dr. Sharfin recommended continuation of Celebrex and prescribed Vicodin (Tr. 200). Dr. Sharfin also administered cortisone injections [on numerous subsequent visits] (Tr. 192-94, 197).

Yolanda R. Lobo, M.D., examined Plaintiff on August 10, 2002 (Tr. 184-85). Her examination was within normal limits with an antalgic gait (Tr. 184-85). In a follow-up report dated November [23,] 2002, Dr. Lobo indicated that Plaintiff complained of bilateral shoulder pain, back pain and bilateral knee tenderness (Tr. 172). Dr. Lobo continued to treat Plaintiff conservatively throughout 2002 (Tr. 170-84). On January 22, 2003, Plaintiff complained of aggravating her back while lifting a patient (Tr. 169).

On March 15, 2003, Plaintiff reported that she had lifted a 103-year-old female she treated who was unable to get out of bed (Tr. 164). She complained of aggravated back pain, muscle spasm and right sciatica (Tr. 164). On May 17, 2003, Plaintiff told Dr. Lobo that she had gotten another job working three days per week (Tr. 160). On September 12, 2003, Plaintiff presented to Dr. Lobo stating that she had been on vacation and did a lot of walking which increased her knee pain (Tr. 155). On January 7, 2004, Dr. Lobo noted that Plaintiff had muscle spasms and decreased range of motion of the cervical and lumbar spine (Tr. 149). She also noted that Plaintiff had been lifting a heavy bedridden patient (Tr. 149).

Plaintiff [indicated] on April 9, 2004, that she was "very busy lately" and had "lost her job" (Tr. 100). On April 21, 2004, Plaintiff reported that she had worked for two and a half days as a waitress for six hours each day, but experienced severe anxiety (Tr. 139). On May 25, 2004, Dr. Sharfin gave Plaintiff

4

a cortisone injection in the right knee and advised Plaintiff to stop working (Tr. 190).

Noel Mora, M.D., treated Plaintiff for osteoarthritis from 2002-2004 (Tr. 201-09). During an evaluation [o]n April [12,] 2004, Dr. Mora assessed anxiety (Tr. 205).

Dahlia V. Gordon, Psy.D., saw Plaintiff for a consultative mental status evaluation on October 13, 2004 (Tr. 235-37). Plaintiff reported that she was able to travel, drive, make purchases, manage her finances and cook (Tr. 236). Her affect was generally cheerful and appropriate, but her mood was anxious (Tr. 236). She ambulated without the use of an assistive device (Tr. 236). Dr. Gordon noted she had no evidence of a psychosis or thought disorder (Tr. 236). Plaintiff's attention and concentration appeared to be impaired (Tr. 236). Anxiety disorder was assessed (Tr. 237). A Global Assessment of Functioning (GAF)[3] of 55 was assessed (Tr. 237). Dr. Gordon opined that Plaintiff had a "good" ability to follow work rules, relate to co-workers, deal with public, interact with supervisors and function independently (Tr. 258). She had a "fair" ability to use judgment, deal with work stress and maintain attention/concentration (Tr. 258).

Plaintiff testified at an administrative hearing held on July 25,

---

[3] Defendant's Motion notes:

> Global assessment of functioning is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders Text Revision 32-34 (4 th ed. 2000) (DSM-IV-TR). . . . A GAF of 51 through 60 is characterized by moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). See DSM-IV-TR at 34.

Defendant's Motion at 5 n.3 (DE 21).

2005 (Tr. 28[0]-300).[4]  She stated that she had used a cane for three years due to unstable knees (Tr. 282).  Plaintiff said that she could not bend or stoop (Tr. 283).  She alleged that her medication made her drowsy (Tr. [283-84]).  Plaintiff testified that she could only lift five [to six] pounds comfortably, walk [20 to] 25 feet with a cane, and stand no more than 15 minutes (Tr. 284).  She did very few household chores and read during the day (Tr. 28[6]-88).  Plaintiff stated that she had not worked as a waitress since she was a teenager, but may have tried to work as a companion in 2004 (Tr. 293).  She also denied going on vacation, but visited her sister and did "a lot" of walking in her house (Tr. [295-96]).  Plaintiff admitted that she had attempted to get jobs since January 2000 (Tr. 296).  She stated that every time she attempted to work, she hurt herself (Tr. 297-99).  Plaintiff amended her alleged onset of disability date to January 1, 2003 (Tr. 301).

Defendant's Motion at 3-6 (DE 21).

## IV.  STANDARD OF REVIEW[5]

In reviewing claims brought under the Social Security Act, the court's role is a limited one. The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." Richardson v. Perales, 402 U.S. 389, 401 (1971); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" is evidence that a reasonable person would accept as adequate to support the challenged conclusion. Perales, 402 U.S. at 401; Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). The

---

[4] The undersigned notes that at the hearing counsel stated that Claimant's "primary complaint . . . is her knees," although she also has back pain and she has "some anxiety" and depression attributable to her physical deterioration.  Tr. 281-82.

[5] The SSI disability regulations appear in Subsection I of 20 C.F.R. Part 416, 20 C.F.R. § 416.901 et seq., and are generally identical to those set forth in 20 C.F.R. Part 404, Subsection P, 20 C.F.R. § 404.1501 et seq., governing Social Security disability determinations.  The standard of review in SSI cases is the same as the standard for Social Security disability cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing Social Security disability determinations is generally applicable to SSI cases.

court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Bloodsworth, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, the court must determine whether the ALJ properly applied the correct legal standards. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

V.    ANALYSIS

    A.    The Sequential Evaluation

A "disability" is defined as an inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than 12
> months.

42 U.S.C. § 1382c(a)(3)(A). In determining the merits of a claim for benefits, courts must consider the evidence as a whole, including: 1) objective medical facts or clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and 4) the claimant's age, education, and work history. Walden, 672 F.2d at 839.

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the

7

second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment is not found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next phase of the analysis. Id.

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix I of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the "residual functional capacity" to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define "residual functional capacity" as "what you can still do despite your limitations." 20 C.F.R. §§ 404.1545, 416.945. This determination takes into account "all relevant evidence," including the medical evidence, the claimant's own testimony, and the observations of others. Id. The ALJ must then compare the residual functional capacity to the demands of the previous employment to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the burden shifts to the Commissioner to demonstrate that there exists other substantial gainful employment in the national economy that the claimant can perform. Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); Smith v. Schweiker, 646 F.2d 1075, 1077 (5th Cir. Unit

8

A 1981). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. Smith, 646 F.2d at 1077. These shifting burdens comprise the fifth and final step, at which point the ALJ must resolve whether the claimant is actually capable of performing other gainful and substantial work within the economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

To help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. See 20 C.F.R. § 404, Subpt. P, App. 2. The Guidelines may be applied where a claimant is not performing substantial gainful activity and is prevented by a severe, medically determinable impairment from doing past relevant work. 20 C.F.R. §§ 404.1569, 416.969. The Guidelines are composed of detailed grids and rules, which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled. See Walker, 826 F.2d at 1002.

Yet, the Guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule." 20 C.F.R. §§ 404.1569, 416.969. The Guidelines, therefore, are generally not applicable where the claimant is unable to "perform the full range of work required of that category on a daily basis." Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991). Further, they may not be used when the claimant suffers from (significant) non-exertional limitations, such as (significant) mental impairments. Id.; Walker, 826 F.2d at 1003. When the

9

Guidelines may not be conclusively applied, they may serve only as a framework to determine whether sufficient jobs exist within the claimant's range of residual functional capacity. Hargis, 945 F.2d at 1490. In such instances, the Commissioner must instead carry his burden through the use of a vocational expert. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Walker, 826 F.2d at 1003. A vocational expert provides the ALJ with a realistic appraisal of the work a claimant is capable of performing. Walker, 889 F.2d at 50.

B.    Application of the Sequential Evaluation by the ALJ

After considering all of the evidence, the ALJ concluded that Claimant was capable of returning to her past relevant work and was, therefore, "not disabled" under the Social Security Act. Tr. 17.

In arriving at this conclusion, the ALJ addressed each step in the evaluative sequence.[6] He first observed that Claimant has not engaged in substantial gainful activity since her alleged onset of disability. Tr. 14A. The ALJ next found that Claimant has the following "severe" impairment: "osteoarthritis in both knees."[7] Id. Additionally, the ALJ

---

[6] The ALJ first noted that with regard "to [her] claim for a Period of Disability and Disability Insurance Benefits, . . . [Claimant] has earned sufficient quarters of coverage to remain insured for Title II benefits only through March 31, 2004." Tr. 13. To receive Disability Insurance Benefits, therefore, Claimant was required to establish a disability during the 15-month period commencing on the (amended) date of her disability onset, January 1, 2003, and concluding on the expiration date of her insured status, March 31, 2004.

By contrast, to receive SSI benefits, Claimant was required to establish that she was disabled while her application was pending. See 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335.

[7] The ALJ also concluded that Claimant did not have a severe mental impairment, despite evidence in the record that Claimant suffered from anxiety. Tr. 14A. The ALJ

10

found that Claimant's impairment failed to meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Id.

The ALJ then assessed Claimant's residual functional capacity. As part of this assessment, the ALJ considered all the evidence, including Claimant's subjective complaints; however, he found that Claimant's "subjective complaints [were] not fully credible to the extent that [she was] unable to perform all work activity." Tr. 16. According to the ALJ:

> [T]he [C]laimant's allegations are inconsistent and disproportionate to the medical evidence in the record. . . . The [C]laimant admitted that pain medications help a lot. The record also shows that on several occasions in the years 2003 and 2004, the [C]laimant was working as a waitress and as a companion and was lifting up patients, even heavy patients. Although the record does not show that the [C]laimant was earning[] wages in 2003 or 2004, the evidence does suggest that her activities of daily living have been greater than she has generally reported.

Tr. 16-17. Then, after considering the entire record, including medical evidence, the ALJ made a finding with respect to Claimant's residual functional capacity:

> The claimant is limited to lifting no more than 20 pounds and is unable to engage in prolonged standing or walking. In addition, the claimant is limited to occasional balancing, stooping, kneeling, crouching, and crawling and must avoid climbing. On this basis, light and sedentary work are not precluded.[8]

---

noted that "[C]laimant's mental state of being is no more than a mild abnormality . . . [and] would not . . . interfere with her ability to work." Id.

[8] The Code of Federal Regulations defines "sedentary" and "light" work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket

Tr. 18.

Having found that Claimant's residual functional capacity does not preclude light and sedentary work, the ALJ next considered whether she retained the ability to "perform any of her past relevant work." Tr. 17. The ALJ noted that Claimant's past jobs included "work as a service coordinator and companion." Tr. 17. In view of "[C]laimant's descriptions regarding her past jobs," the ALJ found that "[C]laimant [could] return to her past relevant work, as she described [that work]." Tr. 17. Given that Claimant could perform her past relevant work, the ALJ concluded that "[C]laimant is not disabled within the meaning of the Social Security Act, at any time through the date of this decision . . . ." Tr. 17.

C.    Discussion

Claimant disputes the findings and conclusions of the ALJ. Claimant argues that the ALJ erred in the following respects: 1) he failed to find that her impairments meet or equal Listings 1.02 and 1.03; 2) he improperly assessed the credibility of her subjective complaints; 3) he improperly determined her residual functional capacity; and 4) he

---

files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary . . . .

Light work involves lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.967(a)-(b), 416.967(a)-(b).

improperly found that Claimant could return to her past relevant work. See Motion for

Summary Judgment 3-6 (DE 14). The undersigned, however, does not find Claimant's

arguments persuasive and addresses each one as part of the discussion below.

        1.    Impairment Listings 1.02 and 1.03

The ALJ found that Claimant's impairment did not meet or equal any of the

"impairments listed in Appendix 1, Subpart P, Regulations No. 4." Tr. 14A. Although

Claimant did not initially claim that her impairment meets Listing level severity, she now

argues that her impairment meets or equals Listings 1.02 and 1.03.[9] Motion at 4 (DE 14).

---

[9]     Listings 1.02 and 1.03 provide:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g. . . . instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion to the affected joint(s), . . . [with] [i]nvolvement of one major peripheral weight bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively . . . ;

> 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively . . . and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

See 20 C.F.R. pt. 404, Subpt. P, App. 1, §§ 1.02-.03 (emphasis omitted). "Inability to ambulate effectively" is defined as:

> an extreme limitation of the ability to walk: i.e., an impairment[] that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device[] that limits the functioning of both upper extremities. . . . [I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able

To show that her impairment meets a listed impairment, Claimant "must present specific medical findings that meet the various tests listed under the description of the applicable impairment." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986); accord 20 C.F.R. § 404.1525. Alternatively, to show "that [s]he has an impairment which is equal to one of the listed impairments, [Claimant] must present medical evidence which describes how the impairment has such an equivalency." Bell, 796 F.2d at 1353; accord 20 C.F.R. § 404.1526.

Although Claimant does suffer from osteoarthritis of both knees and has had reconstructive surgery on both legs (which conforms with the threshold criteria of Listings 1.02 and 1.03) (see Tr. 112, 199), Claimant is not able to show that her impairment causes an "inability to ambulate effectively." See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00B2b(1)-(2), 1.02A, 1.03. Although the ALJ did not specifically address these listings (because Claimant had not claimed that she had an impairment of Listing level severity), the ALJ did note that Claimant "was working as a waitress and as a companion and was lifting up patients, even heavy patients" during the very time that she claimed to be totally disabled. Tr. 16-17. Such work is inconsistent with the type of reliance on an assistive device that Claimant alleged. Indeed, during her examination, Dr. Gordon observed and expressly noted that Claimant "ambulate[d] without the use of assistive devices." Tr. 236 (emphasis added).

Yet, even if Claimant's testimony that she had used a cane for three years were

---

to carry out activities of daily living.

Id. § 1.00B2b(1)-(2) (emphasis added).

14

accepted, the record clearly shows that she is nonetheless able to ambulate effectively; the cane does not limit the functioning of both of her upper extremities, and she is able to walk a sufficient distance to carry out her daily activities. Tr. 139, 149, 155, 160, 236, 286-88. Indeed, Claimant reported not only work as a waitress and companion in 2003, but also extensive walking while on vacation that year. Tr. 139, 149, 155, 160. Further, Claimant told Dr. Gordon that she "is able to feed, dress, and bathe herself," and "she is also able to travel alone, drive, make purchases, manage her finances, and cook." Tr. 236. And Claimant told the ALJ that she uses a cane for support and can perform daily chores such as house cleaning, vacuuming, and making her bed. Tr. 286-88. All of these daily activities, even in small increments, show that Claimant is able to "sustain[] a reasonable walking pace over a sufficient distance." See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2). Claimant, therefore, does not suffer the extreme degree of limitation required to establish an inability to effectively ambulate. Accordingly, the ALJ's finding that Claimant does not meet or equal an listed impairment is supported by substantial evidence in the record.

### 2.   Claimant's Subjective Complaints

The ALJ concluded that "[C]laimant's subjective complaints [were] not fully credible to the extent that [s]he [was] unable to perform all work activity." Tr. 16. Although her motion is not clear, Claimant appears to argue that the ALJ improperly evaluated and rejected her subjective complaints. See Motion at 3-6 (DE 14). The ALJ's assessment of subjective complaints is governed by 42 U.S.C. § 423(d)(5)(A), which states in part:

15

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A). The Eleventh Circuit has stated that an individual alleging disabling pain must show not only evidence of an underlying medical condition, but also either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1985)). "Th[is] standard also applies to complaints of subjective conditions other than pain." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). When this standard is met, the ALJ must then consider a claimant's subjective complaints. Foote v. Chater, 67 F.3d 1553, 1560-61 (11th Cir. 1995). The ALJ, however, is not required to credit those complaints. Id. He may discount them provided he "articulate[s] explicit and adequate reasons for doing so." Id. at 1561-62. The ultimate issue is not whether Claimant has some pain and limitations, but whether Claimant is credible to the extent that her pain and limitations prevent her from performing any kind of work. See Clark v. Chater, 75 F.3d 414, 417 (8th Cir. 1996).

Claimant testified that she suffers from constant and severe pain in her knees, femurs, tibias, and back. Tr. 283. Claimant's daily activities consist of food shopping,

16

household chores, eating out, watching television, and reading. Tr. 286-88. Claimant testified that she could lift 5 to 6 pounds, walk 20 to 25 feet, and stand for about 15 minutes before having to sit down. Tr. 284. She is able to sit for 15 to 20 minutes before she has "to get up and move." Id. Claimant further testified that her pain affects her ability to concentrate and that she frequently is frustrated by simple tasks such as reading a newspaper or watching television. Tr. 288.

The ALJ, however, articulated his reasons for discounting Claimant's subjective complaints. The ALJ stated that "[C]laimant's allegations [were] inconsistent[10] and disproportionate to the medical evidence in the record." Tr. 16. In support of this finding, the ALJ noted the several occasions between 2003 and 2004 when Claimant worked as a waitress and as a companion. Tr.16-17, 100, 110-11, 117, 139, 160. The ALJ also noted that "[a]lthough the record does not show that the claimant was earning[] wages in 2003 or 2004, the evidence does suggest that her activities of daily living have been greater than she has generally reported." Tr. 17; see also 20 C.F.R. § 416.971 (working during the alleged period of disability demonstrates an ability to engage in substantial gainful activity and necessitates a finding of "not disabled").[11] Indeed, not only did

---

[10] Significantly, Claimant alleged different dates (years apart) with respect to the onset of her disability. Prior to the hearing, she maintained that she became unable to work as of January 1, 2000. Yet, after the ALJ questioned her regarding treatment notes in the record showing that she was working as a companion on several occasions, Claimant (through her counsel) amended her disability onset date to January 1, 2003. Tr. 301.

[11] "Even if the work [the claimant] ha[s] done was not substantial gainful activity, it may show that [the claimant is] able to do more work than [the claimant] actually did." 20 C.F.R. §§ 404.1571, 416.971.

17

Claimant work, but her job as a companion required her to lift heavy bedridden patients; this exertional requirement belies her testimony that she could lift only 5 to 6 pounds. Tr. 149, 169, 284.[12]

The ALJ also noted that "[C]laimant admitted that pain medications help a lot." Tr. 16; see also Tr. 111, 117, 283; Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (conditions that can be reasonably remedied by treatment or medication are not disabling). In her hearing before the ALJ, Claimant testified that her medications alleviated her pain and that she plans to have a total knee replacement in the future. Tr. 283, 289. These admissions establish that, although causing some discomfort and aggravation, Claimant's condition is not disabling, as it can be reasonably remedied with treatment and medication.

Although the ALJ did find that Claimant has some limitations, he rejected Claimant's contentions that those limitations leave her completely unable to work. The ALJ, therefore, articulated adequate grounds upon which to discount Claimant's subjective complaints – attempted work as a companion and waitress after the alleged onset of disability and successful treatment with pain medication. Where an ALJ clearly articulates a credibility finding with substantial supporting evidence, as the ALJ did here, a reviewing court may

[12] More specifically, the record shows multiple admissions of employment and daily activities following the disability onset date, even as amended to January 1, 2003: March 15, 2003 – Claimant reported lifting a 103-year old female she treated who was unable to get out of bed (Tr. 164); May 17, 2003 – Claimant told Dr. Lobo that she had gotten another job working three days per week (Tr. 160); September 12, 2003 – Claimant told Dr. Lobo that she had been on vacation and did a lot of walking, which increased her knee pain (Tr. 155); January 7, 2004 – Dr. Lobo noted that Claimant had been lifting a heavy bedridden patient (Tr. 149); April 9, 2004 – Claimant reported to a physician that she "was very busy lately" and had "lost her job" (Tr. 100); and April 21, 2004 – Claimant reported that she had worked for two and a half days as a waitress for six hours each day but experienced anxiety (Tr. 139).

not disturb such a finding.  See Foote, 67 F.3d at 1562.

        3.    Residual Functional Capacity

    Claimant next argues that the ALJ improperly determined her residual functional

capacity. After considering all of the evidence, the ALJ found that "[C]laimant is limited to

lifting no more [than] 20 pounds and is unable to engage in prolonged standing or walking.

In addition, [Claimant] is limited to occasional balancing, stooping, kneeling, crouching,

and crawling and must avoid climbing."[13] Tr. 17. This finding is consistent with the work

that Claimant actually performed following her alleged onset of disability. Given all of the

evidence, including the medical evidence and Claimant's admission of work history, the

undersigned concludes that substantial evidence supports the ALJ's residual functional

capacity finding.

    Claimant counters that the ALJ failed to properly consider the reports of Drs. Mora

and Gordon, who (according to Claimant) "performed extensive examinations and reported

clearly the severity of [Claimant's] physical and mental conditions." Motion at 4 (DE 14).

Yet, the ALJ's decision shows that the ALJ did consider the reports of both. Tr. 14A.

    Dr. Mora, who is a family practitioner, treated Claimant between 2002 and 2004 for

osteoarthritis, and he also assessed that she had anxiety. Tr. 201-09.   Dr. Mora

---

[13] The ALJ noted that the State Agency non-examining physicians opined that
Claimant could not engage in prolonged standing or walking and must avoid climbing and
that she is restricted to occasional balancing, stooping, kneeling, crouching, and crawling.
These opinions were in accord with the medical evidence of record and Claimant's
acknowledged work after the onset of her alleged disability. Id.; see also SSR 96-6p, 1996
WL 374180, at *2 (an ALJ reviewing the findings of State Agency physicians must consider
factors such "as the supportability of the opinion in the evidence . . . and the consistency
of the opinion with the record as a  whole . . . .").

prescribed Claimant pain killers and instructed her to continue taking Celebrex. Tr. 201-06. There is no evidence, however, that Dr. Mora actually treated Claimant for anxiety, despite assessing anxiety on a number of occasions and prescribing her Xanax. Tr. 201-09. The ALJ noted that as a result of Dr. Mora's assessment, the Florida State Agency retained a psychologist, Dahlia V. Gordon, Psy.D., to conduct a consultative mental status examination. Tr. 14A.

On October 14, 2004, Dr. Gordon saw Claimant for a general clinical evaluation and mental status assessment. Tr. 235. The ALJ expressly noted that Dr. Gordon found no evidence of psychosis or thought disorder and that Dr. Gordon found Claimant's affect to be generally cheerful and appropriate, although her mood appeared anxious. Tr. 14A. And Dr. Gordon reported that Claimant was experiencing some difficulty in maintaining attention and concentration at times, which may be related to anxiety. Tr. 14A. Citing the absence of evidence showing that a psychologist or psychiatrist had treated[14] Claimant for any mental impairment for a continuous 12-month period, as well as the absence of any

---

[14] According to the Regulations:

> Treating source means [a claimant's] own physician, psychologist, or other acceptable medical source who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]. [An ongoing treatment relationship results ] when the medical evidence establishes that [a claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [a claimant's] medical condition(s).

20 C.F.R. §§ 404.1502, 416.902

20

indication that Claimant had been hospitalized for a mental condition, the ALJ concluded: "The [C]laimant's mental state of being is no more than a mild abnormality with such a minimal effect on the claimant that it would not be expected to interfere with her ability to work, irrespective of age, education, or work experience." Tr. 14A. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (absence of ongoing counseling or psychiatric treatment or of deterioration or change in claimant's mental capacity disfavors a finding of disability).

Claimant next argues that Dr. Gordon's assignment of a GAF score of 55 is evidence that her condition is "quite serious." Claimant's Motion at 4. By definition, however, a GAF score of 55 may indicate moderate symptoms. Moreover, the GAF scale is intended for mental health practitioners in making treatment decisions. See DSM-IV AT 32-34. The GAF scale has not been endorsed for use in the Social Security and SSI programs, and the Commissioner has stated that GAF scores have no "direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 2000 WL 1173632, at *50764-65 (Aug. 21, 2000); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may assist ALJ in formulating claimant's residual functional capacity, but "is not essential to the RFC's accuracy").

Claimant next argues that the ALJ should have called a medical expert to help establish her residual functional capacity, as well as her onset date and her satisfaction of the Listing criteria. Claimant's Motion at 4-5 (DE 14). Yet, an ALJ is not obligated to seek expert medical testimony where the administrative record already contains sufficient medical evidence to permit the ALJ to arrive at an informed decision. Wilson v. Apfel, 179

21

F.3d 1276, 1278 (11th Cir. 1999) (holding that the administrative record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision). In this instance, the record was sufficiently developed such that the ALJ could render an informed decision without the assistance of expert testimony. The administrative record contains numerous reports of physicians. In particular, Drs. Sterling, Sharfin, Lobo, and Mora had treated Claimant for her osteoarthritis since 2000, and the record is replete with their treatment notes and other reports. Further, all of these treatment notes and reports support the ALJ's conclusion that, although Claimant suffers from osteoarthritis of the knees, Claimant's impairments are not of Listing level severity. Therefore, the ALJ's decision not to call a medical expert regarding Claimant's physical impairments is supported by the record.

Nor was the ALJ required to call a mental health expert. Although Dr. Mora stated that Claimant had some anxiety, as the ALJ observed, the record contains no evidence of any subsequent treatment for anxiety. Tr. 14A. And, even though Claimant did not allege disability due to anxiety, the State Agency nonetheless requested a consultative examination with Dr. Gordon. After thoroughly considering Dr. Gordon's findings, as well as the other evidence and the lack of mental health treatment, the ALJ had an adequate basis upon which to find that Claimant's mental impairment "would not be expected to interfere with her ability to work." Tr. 14A.

        4.    Past Relevant Work

Claimant next argues that the ALJ improperly determined that she could return to her past relevant work. The ALJ found that "[C]laimant is limited to lifting no more [than]

20 pounds and is unable to engage in prolonged standing or walking. [She] is restricted to occasional balancing, stooping, kneeling, crouching, and crawling and must avoid climbing." Tr. 17. Based on these findings, the ALJ determined that Claimant could return to her "work as a service coordinator and companion." Id.; see also id. at 73-74.

The ALJ was required to make explicit findings regarding the physical and mental demands of Claimant's past relevant work and to then compare these demands with her residual functional capacity. See 20 C.F.R. §§ 416.920(a)(4)(f), 416.960(b). Here, the ALJ expressly found that Claimant's past work as a service coordinator and companion "did not require the performance of work-related activities precluded by her residual functional capacity." Tr. 18. The ALJ predicated this finding upon Claimant's own description of her past jobs. Tr. 17. Claimant had described her work as a service coordinator as assisting homeless persons at a shelter in their search for employment, for housing, and for Social Security benefits. Tr. 73. According to Claimant, this job did not require her to lift or carry anything; in a given day, she had to walk for only 30 minutes, had to stand for only 30 minutes, and had to sit for 6 hours. Tr. 73. Claimant described her (other) work as a companion as caring for an elderly lady, which included preparing meals, engaging in "very light housekeeping," and "mostly sit[ting] with [the] patient." Tr. 74. According to Claimant, this job required her to lift less than 10 pounds; in a given day, she had to walk for one hour, stand for one hour, and sit for eight hours, but she did not have to climb or stoop. Tr. 74. Accordingly, given the ALJ's assessment of Claimant's residual functional capacity, coupled Claimant's own admissions in the record, the ALJ's determination that Claimant could "return to her past relevant work, as she described [that

23

work]," is supported by substantial evidence.

VI.     RECOMMENDATION

Claimant had a fair hearing and full administrative consideration in accordance with the applicable statutes and regulations. The ALJ's findings are supported by substantial evidence in the administrative record. The ALJ, therefore, correctly concluded that the Claimant is not entitled to a period of disability, Disability Insurance Benefits, or SSI payments. Accordingly, the undesigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment (DE 14) be DENIED, that Defendant's Motion for Summary Judgment (DE 21) be GRANTED, and that the Commissioner's decision be AFFIRMED.

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See 28. U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this 14th day of March 2008.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished to:

Honorable James I. Cohn
United States District Judge

Bernard J. Levy, Esq.
8201 Peters Road, Suite 1000
Fort Lauderdale, Florida   33324
Counsel for Plaintiff Gisele Benedict

David I. Mellinger, Esq.
Assistant United States Attorney
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida   33394

Christina Young Mein, Esq.
Assistant Regional Counsel
Social Security Administration
601 East 12th Street, Room 535
Kansas City, Missouri   64106